

**ORIGINAL**

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

WACO DIVISION

FILED
JUL 0 6 2010
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

CATHY SIMMONS, )
individually, and on behalf of )
all others similarly situated, )
) Civil Action No. 6: 10-CV-162
)
)
Plaintiff, )
)
vs. ) JURY TRIAL DEMANDED
)
LANDIS+GYR INC., a Delaware )
corporation, and CELLNET TECHNOLOGY, )
INC., a Delaware corporation, )
)
Defendants. )

## CORRECTED CLASS ACTION COMPLAINT

Plaintiff Cathy Simmons ("Plaintiff"), by her undersigned counsel, alleges the following upon personal knowledge as to her own acts and upon information and belief as to all other matters. Plaintiff's information and belief are based upon the investigation conducted by Plaintiff's counsel as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant Landis+Gyr Inc. ("L+G") and Defendant Cellnet Technology, Inc. ("Cellnet") (collectively, "Defendants") on behalf of herself and all residents of Texas who have an L+G electric smart meter (the "SmartMeters") installed at their residence(s) and who were damaged as a result thereof (the "Class").

2. Plaintiff, by this Complaint, alleges violations of Texas Deceptive Trade Practices Act ("DTPA") and unjust enrichment arising out of Defendants' defective SmartMeters.

CORRECTED CLASS ACTION COMPLAINT                                                    Page 1

3. The SmartMeters are defective because the SmartMeters' firmware does not transmit actual electricity usage data from Class members' homes to Class members' utility companies for billing. Rather, the defect in the SmartMeters' firmware causes the SmartMeters to transmit artificially inflated electrical consumption data that is in excess of the amount of electricity that is actually used by Plaintiff and Class members.

4. As a result of a defect in the SmartMeters, customers have received electricity bills that overstate their electricity usages which are based on the incorrect electricity usage data generated and transmitted by the SmartMeters.

5. Despite knowledge of the existence of the defect, and the avalanche of customer complaints that have surfaced concerning the SmartMeters, Defendants have refused to admit that the SmartMeters are defective. Defendants have also failed to remedy the defect or to compensate Class members for the millions of dollars that they have been wrongfully charged as a result of the defect in the SmartMeters.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332, as there is diversity among the parties and the matter in controversy exceeds the sum or value of $5,000,000. Plaintiff is a citizen of the State of Texas, whereas Defendant L+G is a citizen of the State of Indiana and Defendant Cellnet is a citizen of the State of Georgia. Furthermore, Plaintiff alleges that the total number of members of the proposed Class is greater than 100.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants have contracted with certain utilities to provide SmartMeters, which were installed in this District. Furthermore, Plaintiff is a resident of this District.

8. Defendants are subject to personal jurisdiction in this District and/or maintain contacts in this District sufficient to subject Defendants to personal jurisdiction. In particular, Defendants entered into a $690 million contract with Oncor Electric Delivery Company LLC ("Oncor") to furnish approximately 7,000,000 SmartMeters in the State of Texas sufficient to establish personal jurisdiction for purposes of this action.

## THE PARTIES

9. Plaintiff Cathy Simmons is a resident and citizen of the State of Texas. A SmartMeter was installed at Ms. Simmons' home in February 2009. Following this installation, the SmartMeter installed at her home generated electricity usage data that incorrectly made it appear as though Ms. Simmons' electricity usage increased by as much as 79% for the month of February 2010 over the same month in 2009 despite the fact that Ms. Simmons' made no material changes to her electricity consumption habits.

10. Defendant Landis+Gyr Inc. (L+G) is a corporation organized and existing under the laws of Delaware and is a citizen of the State of Indiana, having its principal place of business located at 2800 Duncan Road, Lafayette, IN 47904. L+G is one of the world's largest electricity metering companies and has research and development facilities in Alpharetta, GA, Pequot Lakes, MN, and Lafayette, IN, among other places.

11. Defendant Cellnet Technology, Inc. (Cellnet) is a corporation organized and existing under the laws of Delaware and is a citizen of the State of Georgia, having its principal place of business at 30000 Mill Creek Avenue, Suite #100, Alpharetta, GA 30022. Cellnet's offerings include advanced metering infrastructure, in-premise networks, and automated meter reading. Cellnet provides communication and automation solutions to utilities worldwide, and

has more than 14 million customer endpoints representing contracted revenue of more than $2.2 billion over the next 15 years.

## SUBSTANTIVE ALLEGATIONS

### A Primer On Electrical Meter Technology

12. An electrical meter is a device that measures the amount of electricity consumed by a customer. Electrical meters are typically calibrated in billing units, the most common unit being the kilowatt hour ("KwH"), which is equal to the amount of electricity used by a load of one kilowatt over a period of one hour. "Traditional" electrical meters are installed by a utility company in close proximity to where power lines enter a customer's residence and display the amount of electricity used on indicators located on the meter's face. An employee of the utility company is sent out to "read" the display on each customer's electrical meter and report the customer's electrical usage back to the utility company on a periodic basis.

13. In contrast to traditional meters, a SmartMeter is an automated electricity metering system. SmartMeters have the capability to monitor, record and report electrical consumption data from a Class member's residence to the Class member's utility company, without the need for a "meter reader."

14. Each SmartMeter is equipped with a network radio which is supposed to transmit the customer's actual electrical consumption data from the SmartMeter to a network access point, or data center, and then to the utility company, via a cellular network. Defendants L+G and Cellnet manufacture the SmartMeters.

## The SmartMeters Are Defective

15. Plaintiff's utility company began deploying the SmartMeters as early as the second quarter of 2008. Almost immediately after deployment, however, complaints arising from the defect in the SmartMeters began to surface.

16. Shortly after installation of the SmartMeters, Class members began receiving electricity bills that reflected electrical consumption that was far in excess of Class members' actual electrical usage; i.e., electrical bills that reflected artificially inflated electrical usage. Because Class members' electrical bills are based in part on the amount of electricity consumed each month, Class members' electrical bills quickly sky-rocketed because their bills had been calculated based on artificially inflated electrical consumption data. In some cases, Class members saw their electrical bills increase by as much as 200% to 300% over what they had paid for electricity for the same months in the prior-year period before the installation of the SmartMeters.

17. While Defendants and utilities have repeatedly sought to attribute this unprecedented increase in electric bills to purported increases in electricity consumption and factors other than the SmartMeters, in all actuality, the dramatic increases in the amount of electricity consumption reported by the SmartMeters in Class members' homes have been caused by the defect in the SmartMeters.

18. In particular, the SmartMeters are defective because the SmartMeters' firmware prevents the SmartMeters from transmitting Class members' actual electricity usage data from Class members' homes.

19. Instead, the SmartMeters report electrical consumption in amounts that are artificially inflated and materially greater than the amounts of electricity actually consumed by

members of the Class, thereby resulting in grossly inflated electricity bills being received by Plaintiff and Class members.

20. Class members have been damaged because they have paid for electricity in excess of the electricity that they have actually consumed because the SmartMeters transmitted artificially inflated electrical consumption data that is in excess of the amount of electricity actually consumed by Class members.

## Class Members Complain About Increases In Their
## Electricity Bills As A Result Of The Defect In The SmartMeters

21. As a result of the defect in the SmartMeters, Class members began to voice their outrage over electricity bills that, in some cases, more than tripled due to the defect in the SmartMeters.

22. The following is a sampling of customer complaints concerning the defective SmartMeters:

| Date of Complaint | Complaint | Source |
|---|---|---|
| 2/23/10 | **Oncor recently installed a smart meter on my home and within 2 weeks it stated I had used 5750 KW, My home has never gone over 3600** and that was during the hot summer months. I wish a company would come out and say we will lease solar panels to our customers as long as they signup with us. I would be happy to pay to get a grid tie system and pay a lease fee as long as txu and oncor doesn't get anything. The PUC isn't nothing but a front for the electric companies. | Electricity Bid <http://www.electricitybid.com/electricity/index.php/2009/05/11/tdsp-meter-surcharge-being-felt-by-texas-energy-consumers> |
| 3/7/10 | **Now, it's [utilities bill] just as high as my mortgage. My mortgage is right at $800, my electric bill is $755.** | NBC-Dallas/Ft.Worth <http://www.nbcdfw.com/news/local-beat/Residents-Fight-Smart-Meters-86726112.html> |
| 3/15/10 | I AM SO TIRED OF THESE PEOPLE | NBC-Dallas/Ft.Worth |

| | | |
|---|---|---|
| | TELLING US THAT THIS IS OUR FAULT...I HAVE BEEN IN MY HOME FOR 6 YEARS AND NEVER...NEVER HAD A BILL THIS HIGH...FOR THE LAST 3 MONTHS MY BILL HAS BEEN 389 TO 399 FROM THE REGULAR 215 AND HIGHEST 265...BUT THEY ARE SAYING ITS BECAUSE OF THE WEATHER...I AM SO SICK OF THIS!!!! I TELL YOU WE ARE BEING CHEATED!!! | <http://www.nbcdfw.com/news/local-beat/Residents-Fight-Smart-Meters-86726112.html> |
| 3/16/10 | Three months of $450-$500 electric bills, when they were about $200, is one of the reasons we had to move. Encore, fix the problem! | Smart Utility Reform Citizens <http://search.netoffer.com/vpage.php?id=43413cceafd2ea8d4a5e17d21c4840d9e> |
| 3/18/10 | My bills have went from 70.00 to 138.00 to 338.00 to 178.00 to 207.00, and I HAVE NOT BEEN USING ANYTHING. HEATER OR AIR. I HAVE NOT USED AS MUCH ANY. | Smart Utility Reform Citizens <http://search.netoffer.com/vpage.php?id=43413cceafd2ea8d4a5e17d21c4840d9e> |
| 3/22/10 | New digital meter installed today I guess. No notice left on door. meter says I am using 24.08 KwH per hour on matter what appliances I turn off. **In 1 day I have used 461 KwH in spite of the fact my usage for the entire last payment period was 900kwh.** Something wrong dudes!!!!!! | Electricity Bid <http://www.electricitybid.com/electricity/index.php/2009/05/11/tdsp-meter-surcharge-being-felt-by-texas-energy-consumers> |
| 3/23/10 | We had asmart meter installed middle 2009 and had nothing unusual happen until the end of the year. All of a sudden **our electric bills kept increasing to the point that we had gone from $350.00 a month to over $800.00 a month.** We have the thermostat set at a constant temp. - never changed. have done NOTHING different. We called for someone to come and check it 3 weeks ago and were told someone would be there in the next week. Still waiting. **Something is really wrong with these meters.** | CBS 11-Dallas/Fort Worth <http://cbs11tv.com/local/Oncor.smart.meters.2.1572972> |
| 3/25/10 | Lowest bill: 5/23/09 $101.33 Highest bill: 2780 8/18/09 $278.64 Smart meter 3rd wk Dec 5535 1/23 $609.27 4580 2/18 $485.75 5390 3/22 $550.99 | Smart Utility Reform Citizens <http://search.netoffer.com/vpage.php?id=43413cceafd2ea8d4a5e17d21c4840d9e> |

| | | |
|---|---|---|
| 3/26/10 | Our electric bill went from the highest of $287 in July, 2009, before the smart meter to $636 highest in Jan. 2010 after. Usage-high 1954 to 4456, etc | Smart Utility Reform Citizens <http://search.netoffer.com/vpage.php?id=43413ceafd2ea8d4a5e17d21c4840d9e> |
| 3/27/10 | I live alone, and have the heater off since February, my bill since is $800. I will be disconnected if I don't pay $500 by April. I shut down the main breaker for the 4 days I was away and registered over 30 kilowatts, one cold night registered 200kwts with everything off | Smart Utility Reform Citizens <http://search.netoffer.com/vpage.php?id=43413ceafd2ea8d4a5e17d21c4840d9e> |
| 03/30/10 | Oncor put in new meter 2/22/10. Usage combined for 1st 3 weeks of Feb was 672. Usage for last week of Feb was 732.3. **3 wks on old meter = 1 wk on new?** | Smart Utility Reform Citizens <http://search.netoffer.com/vpage.php?id=43413ceafd2ea8d4a5e17d21c4840d9e> |
| 5/11/10 | **When we had four people in our home we never had a bill over $150.00 and now there is only two of us and have been for the last two years, but for the last three months our bill has been close to $300.00** for a 1500 sq ft house. I have called and asked for help and explanations for this three times now and all I get from TXU is nothing can be done. They swear it is accurate. I really need help on this and no one will help me. I am soooo mad at them, I am willing to change to a new company. No one will help me any suggestions? | NBC-Dallas/Ft.Worth <http://www.nbcdfw.com/news/local-beat/Residents-Fight-Smart-Meters-86726112.html> |
| 5/30/10 | **I was not home in December and still a $400 bill. Nobody seems to care.** I would stick to my guns to and shell out a few $100,000 because they made millions. This is piracy. | Killeen Daily Herald <http://www.kdhnews.com/news/story.aspx?s=41894&q=smart+meter> |

## The Flood Of Customer Complaints Spawns Five Requests For A Moratorium On The Installation Of The SmartMeters

23.     The alarming number of consumer complaints prompted town hall meetings and requests by two Texas State Senators and three Texas State Representatives for a "meter moratorium" to stop the installation of the defective SmartMeters in the State of Texas.

CORRECTED CLASS ACTION COMPLAINT                                                                 Page 8

24. In particular, on March 2, 2010, Texas State Senator Troy Fraser (R), chairman of the Senate Business and Commerce Committee, asked the Public Utilities Commission of Texas ("PUCT") to halt installation of the defective SmartMeters and suspend the charge monthly fees charged to members of the Class for the defective SmartMeters.

25. As complaints poured in regarding the defective SmartMeters, Texas State Senator Royce West (D) joined Sen. Fraser and also sought a moratorium on the installation of the defective SmartMeters.

26. Texas State Representative Kirk England (D), Texas State Representative Barbara Mallory Caraway (D) and Texas State Representative Robert Miklos (D) joined their constituents, echoing the need for an immediate moratorium on installation of the defective SmartMeters.

27. In April 2009, Representative Miklos stated in a letter to the PUCT that the "common thread among [Class members' complaints] is a uniform and unexplainable rise in usage and charges immediately following the installation of these devices."

28. Representative England stated "there's a problem and I think it's more than just the weather."

29. Despite the avalanche of complaints regarding the defective SmartMeters, and the recognition by these Texas lawmakers that the SmartMeters are defective, Defendants have refused to acknowledge the defect in the SmartMeters.

**Plaintiff Simmons' Electricity Bills Increase**
**Dramatically As A Result Of The Defect In The SmartMeters**

30. A SmartMeter was installed at Plaintiff Simmons' home on or about February 15, 2009. Immediately following the installation of the SmartMeter at Plaintiff Simmons' home, the amount of electrical consumption reported by the SmartMeter installed at Plaintiff Simmons'

home increased dramatically over the amount of electrical usage reported by the conventional electrical meter that had previously been operational at Plaintiff Simmons' home.

31. In particular, the SmartMeter reported Plaintiff Simmons' electricity usage as 2,050 KwH in February 2010 compared to only 1,143 KwH in February 2009, *an increase of 79%*. The SmartMeter reported this dramatic increase in electricity consumption despite the fact that Ms. Simmons did not change her electricity consumption habits during this period of time.

32. Despite the fact that the dramatic increases in purported electrical consumption reported by the SmartMeters and reflected in Class members' electrical bills indicates that the SmartMeters are defective, Defendants have refused to acknowledge the defect in the SmartMeters and similarly refused to reimburse Class members for their out-of-pocket damages.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this class action individually, and on behalf of all residents of Texas who have a SmartMeter installed at their residences and who were damaged as a result thereof.

34. Members of the Class are so numerous that joinder of all members would be impracticable.

35. There are questions of law and fact common to all the members of the Class that predominate over any questions affecting only individual members, including:

    a. Whether the SmartMeters are defective;

    b. Whether Defendants violated the Texas DTPA;

    c. Whether Defendants were unjustly enriched as a result of the installation of the SmartMeters;

d. Whether Defendants knew, or were reckless in not knowing, that the SmartMeters were defective; and

e. Whether, as a result of Defendants' misconduct, Plaintiff and the other Class members are entitled to damages, restitution, equitable relief, injunctive relief, or other relief, and the amount and nature of such relief.

36. Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

37. Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation.

38. A class action is superior to all other available methods for this controversy because: i) the prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; ii) the prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants; iii) Defendants acted or refused to act on grounds generally applicable to the Class; and iv) questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT I
**(By Plaintiff, Individually and on Behalf of Class Members, for the Violations of the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code §17.50(b)(2) For Injunctive Relief)**

40. Plaintiff hereby incorporates all the above allegations by reference as if fully set forth herein.

41. The circumstances giving rise to Plaintiff and Class members' allegations, including the design, development, and installation of the defective SmartMeters occurred in the State of Texas. Additionally, Defendants sell the SmartMeters in Texas. Accordingly, application of Texas law is appropriate.

42. The SmartMeters are "goods" within the meaning of Tex. Bus. & Com. Code § 17.45(1).

43. Plaintiff and Class members are "consumers" within the meaning of Tex. Bus. & Com. Code § 17.45(4) because, at all relevant times, Plaintiff and Class members leased the SmartMeters for a monthly fee.

44. At all times relevant hereto, Defendants manufactured the SmartMeters, which are defective.

45. The SmartMeters are defective because the SmartMeters' firmware prevents the SmartMeters from reporting and transmitting actual electricity consumption data from Class members' homes. Because of this defect, the SmartMeters report electricity consumption that is materially greater than the amounts of electricity actually consumed by members of the Class, and Class members have been, and are continuing to be, damaged because they have been caused to pay for electricity that they have not consumed because of the defect in the SmartMeters.

46. At all times relevant hereto, Defendants had exclusive knowledge of an undisclosed material fact: i.e., that the SmartMeters are defective, which was not known to Plaintiff or members of the Class.

47. Defendants engaged in an "unconscionable action" within the meaning of Tex. Bus. & Com. Code § 17.45(5) because, at all relevant times, Defendants withheld the material fact that the SmartMeters are defective from Plaintiff and members of the Class, who had the SmartMeters installed at their residences.

48. Plaintiff and members of the Class were not aware of the fact that the SmartMeters were defective at the times the SmartMeters were installed or at the times that Plaintiff and members of the Class paid for quantities of electricity that were in excess of the quantities of electricity that Class members actually consumed.

49. If Plaintiff and Class members knew that the SmartMeters were defective and had transmitted and reported electricity consumption that was in excess of the quantities of electricity that the Class members had actually consumed, they would not have paid for the electricity that they did not consume.

50. As a proximate result of Defendants' actions, Plaintiff and Class members suffered damages and are entitled to injunctive relief.

## COUNT II
(By Plaintiff, Individually and on Behalf of All Class Members For Unjust Enrichment)

51. Plaintiff hereby incorporates all the above allegations by reference as if fully set forth herein.

52. The circumstances giving rise to Plaintiff's and Class members' allegations, including the design, development, and installation of the defective SmartMeters occurred in the

State of Texas. Additionally, Defendants sell the SmartMeters in Texas. Accordingly, application of Texas law is appropriate.

53. This Count is brought against Defendants pursuant to Texas' common law doctrine of unjust enrichment.

54. At all times relevant hereto, Defendants manufactured the SmartMeters, which are defective.

55. The SmartMeters are defective because the SmartMeters' firmware prevents the SmartMeters from reporting and transmitting actual electricity usage data from Class members' homes. Because of this defect, the SmartMeters report electricity consumption that is materially greater than the amounts of electricity actually consumed by members of the Class, and Class members have been, and are continuing to be, damaged because they have been caused to pay for electricity that they have not consumed because of the defect in the SmartMeters.

56. At all times relevant hereto, Defendants had exclusive knowledge of the undisclosed material fact; i.e., that the SmartMeters were defective, which was not known to Plaintiff or members of the Class.

57. This knowledge constitutes an "undue advantage" by Defendants over Plaintiff and Class members because Plaintiff and Class members were not aware of the defective SmartMeters at the time the SmartMeters were installed or at the times Plaintiff and Class members paid for quantities of electricity that were in excess of the quantities of electricity that Class members actually consumed.

58. Without knowledge of the defect, Plaintiff and Class members conferred upon Defendants benefits which were non-gratuitous and constituted benefits and money wrongfully secured.

59. Defendants accepted or retained the benefits conferred by Plaintiff and Class members despite Defendants' knowledge of the defect in the SmartMeters.

60. Retaining the benefits conferred upon Defendants by Plaintiff and Class members under these circumstances make Defendants' retention of the benefits unjust and inequitable.

61. Because Defendants' retention of the benefits conferred by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution in a manner established by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment and orders in her favor and against Defendants as follows:

A. An order certifying the Class and directing that this case proceed as a class action;

B. Judgment in favor of Plaintiff and members of the Class in an amount of restitution to be determined at trial;

C. An injunction preventing Defendants from having the SmartMeters installed in Texas until Defendants remedies the defect alleged herein;

D. An order granting reasonable attorneys' fees and costs, as well as pre-and post judgment interest; and

E. Such other and further relief as this Court may deem appropriate.

## DEMAND FOR A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated: July 6, 2010

By: ___/s/ David G. Gamble___

David G. Gamble
State Bar No. 24040946
Seema Tendolkar
State Bar No. 24053509
Brant C. Martin (*pro hac vice* pending)
State Bar No. 24002529
**WICK PHILLIPS
GOULD & MARTIN, LLP**
2100 Ross Avenue, Suite 950
Dallas, TX 75201
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

Paul O. Paradis (*pro hac vice* pending)
Gina M. Tufaro (*pro hac vice* pending)
**HORWITZ, HORWITZ &
PARADIS, Attorneys at Law**
405 Lexington Avenue, 61st Floor
New York, NY 10174
Telephone: (212) 986-4500
Facsimile: (212) 986-4501

Paul R. Kiesel (*pro hac vice* pending)
**KIESEL BOUCHER
LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812

*Counsel for Plaintiff*